# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| SALIM HAJIANI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:14-CV-594-TAV-HBG |
| | ) | |
| ESHA USA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on defendants' Motion for Partial Summary Judgment [Doc. 36] and Motion to Dismiss [Doc. 38], the latter of which the Court converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(d) because defendants attached and relied upon an exhibit [Doc. 46]. Plaintiff, proceeding *pro se*, responded in opposition to these motions [Docs. 42–43]. Defendants then filed replies [Docs. 44–45], to which plaintiff responded yet again [Doc. 47]. Defendant's motions are thus fully briefed and ready for disposition. For the reasons stated below, the Court will grant defendants' motions for summary judgment.

## I.. Background

### A. Factual Background

This case concerns allegations of unpaid overtime wages under the federal Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201–19, along with various other civil wrongs. Plaintiff Salim Hajiani alleges that defendants employed him in their gas-station convenience store from approximately October 10, 2011, to January 10, 2012 [Doc. 1

¶¶ 12–13]. The store is owned by defendant ESHA USA, Inc. ("ESHA"), a Tennessee corporation, and plaintiff alleges that defendants Sameer Ramjee and Jamaludin Sayani own ESHA and control its operations [*Id.* ¶¶ 2, 25–28]. Plaintiff asserts that he routinely worked over forty hours per week as a cashier, but did not receive overtime pay for this work [*Id.* ¶¶ 15–16]. Plaintiff further alleges that he regularly sold goods moving in interstate commerce as part of his work [*Id.* ¶¶ 17–21]. Plaintiff submits that Ramjee and Sayani supervised and controlled his work schedule and activities [*Id.* ¶¶ 30–33].

In addition, plaintiff alleges that, after some time passed, he began to demand payment of unpaid regular and overtime wages from defendants [*Id.* ¶¶ 38–39]. Plaintiff claims that defendants terminated his employment on January 10, 2012, in retaliation for making these demands [*Id.* ¶ 40]. Further, plaintiff asserts that Ramjee and Sayani made derogatory remarks to other potential employers who called for a reference—specifically, that plaintiff was a "bad worker" who would sue them—and that these remarks have made it difficult for plaintiff to find other work [*Id.* ¶¶ 41–42]. Plaintiff also asserts that defendants denied him the rest and meal breaks mandated by Tennessee law and required him to live nearby and stay on-call from 6:00 a.m. to midnight, every day [*Id.* ¶¶ 32–54]. Plaintiff alleges that he generally worked five to six days per week [*Id.* ¶ 55].

All parties concede that they entered into a Confidential Settlement Agreement and Release (the "Settlement Agreement") relating to some or all of plaintiffs' allegations in February 2012 [*See* Doc. 38 p. 2; Doc. 43 p. 1]. Plaintiff was then represented by counsel,

though he has represented himself in this litigation [Doc. 44 p. 2]. One provision of the Settlement Agreement provides as follows:

> Hajiani hereby releases and forever discharges ESHA USA, Inc. and RAMJEE, their agents, employees, insurers, predecessors, successors, assigns, and all other persons or entities in any way related to or affiliated with ESHA USA, Inc. and RAMJEE of and from any and all complaints, claims, demands, causes of action, obligations, damages or any other fault or liability, in contract, by statute, or in tort, however, described, whether or not now known, suspected, or claimed, direct or indirect, which Hajiani has had, currently has or may have against ESHA USA, Inc. and RAMJEE arising from the payment of wages, including overtime wages, and all claims asserted or which could have been asserted under the FLSA.

[Doc. 37-1 ¶ 3]. Defendants argue that this Settlement Agreement should be dispositive of this action [Doc. 37 p. 2; Doc. 38 p. 2]. Plaintiff concedes that he signed the Settlement Agreement, but contends that this agreement did not fully compensate him for the violations of federal and state law defendants committed, and thus did not constitute a total release of his claims against them [Doc. 43 p. 1].

### B. Procedural History

On December 22, 2014, plaintiff filed a complaint against defendants in this Court, seeking monetary relief for failure to pay overtime wages in violation of the FLSA, retaliatory discharge, defamation, unjust enrichment, breach of contract, and other theories [Doc. 1]. After various case-administration and discovery disputes, defendants filed a motion for partial summary judgment and accompanying memorandum of law on May 4, 2017 [Docs. 36–37]. That same day, defendants filed a motion to dismiss, to which they attached an exhibit—a copy of the Settlement Agreement discussed above [Docs. 38,

3

38-1]. Plaintiff filed responses to these motions on July 19, 2017 [Docs. 42–43], to which defendants then replied [Docs. 44–45].

Then, on July 26, 2017, the Court entered an order providing notice to the parties that, because defendants had attached an exhibit to their motion to dismiss and relied upon it therein [Docs. 38, 38-1], the Court would treat this motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d) [Doc. 46]. In compliance with Sixth Circuit case law, *see, e.g.*, *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 465 (6th Cir. 2010), the Court permitted the parties fourteen days from entry of that order to file any additional materials pertinent to the resolution of defendants' motion [Doc. 46 p. 2]. Plaintiff filed a short additional response on August 11, 2017 [Doc. 47], but the parties have not otherwise filed any supplemental materials pertaining to defendants' dispositive motions. Thus, the Court will resolve defendants' motions—treating both as motions for summary judgment—on the record as it currently stands.

## II. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn from the record before the Court must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*

4

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

5

## III. Analysis

Defendants have raised various arguments as to why they are entitled to judgment as a matter of law under Federal Rule of Civil Procedure 56 on plaintiff's claims against them [Docs. 36–38, 44–45]. The Court will address each of these arguments, along with plaintiff's responses [Docs. 42–43, 47], in turn. As explained below, the Court finds that defendants are entitled to summary judgment on all seven of plaintiff's claims.

### A. The Settlement Agreement

First, defendants argue that Counts I, II, IV, and V of the complaint—those arising under the FLSA—are barred because plaintiff released these claims in the Settlement Agreement [Doc. 37 p. 2; Doc. 38 p. 2]. Defendants assert it is undisputed that plaintiff expressly agreed to release all of his claims "in contract, by statute, or in tort, . . . arising from the payment of wages, including overtime wages, and all claims asserted or which could have been asserted under the FLSA" [Doc. 37 p. 2; Doc. 37-1 ¶ 3]. Thus, defendants submit that there is no "genuine dispute as to any material fact" regarding their "entitle[ment] to judgment as a matter of law" on these claims. Fed. R. Civ. P. 56(a).

Plaintiff responds that, although he did enter into the Settlement Agreement, he "was not fully compensated for his claims. Plaintiff was paid just $5350.00 (which included attorney fees)" [Doc. 42-1 p. 2]. Plaintiff asserts that, because this figure does not cover all of his FLSA claims, the release "should be deemed null and void at this stage" [*Id.*]. In a later brief, plaintiff further explains that the Settlement Agreement compensated him only for his regular-time work and corresponding overtime wages—not his on-call

6

time, corresponding overtime wages, or his other claims [Doc. 47 p. 1]. Plaintiff alleges that defense counsel originally drafted an agreement broadly releasing all of plaintiff's claims, but that plaintiff refused to sign that version and the current language was adopted instead [*Id.* at 1–2]. Defendants respond that plaintiff's claim that the Settlement Agreement should be deemed null and void is untenable because plaintiff did not raise this argument in his complaint [Doc. 44 pp. 1–2].

Were the Court to consider only the arguments described above, the Court would be inclined to agree with defendants that plaintiff released Counts I, II, IV, and V in the Settlement Agreement. "A settlement agreement is a type of contract and is governed 'by reference to state substantive law governing contracts generally.'" *Cogent Solutions Grp., LLC v. Hyalogic, LLC*, 712 F.3d 305, 309 (6th Cir. 2013) (quoting *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)). Under Tennessee law,[1] ordinary principles of contract law "govern[] disputes concerning the formation, construction, and enforceability" of settlement agreements. *Waddle v. Elrod*, 367 S.W.3d 217, 222 (Tenn. 2012). Accordingly, "[t]he literal meaning of the contract language controls if the language is clear and unambiguous." *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013); *accord 84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) ("The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract.").

---

[1] In addition to having been executed and performed in Tennessee, the Settlement Agreement contains a choice-of-law clause specifying Tennessee law [Doc. 37-1 ¶ 11].

Here, contrary to plaintiff's reading, the Settlement Agreement released all of plaintiff's "complaints, claims, demands, causes of action, obligations, damages or any other fault or liability" against defendants "arising from the payment of wages, including overtime wages, *and* all claims asserted or which could have been asserted under the FLSA" [Doc. 37-1 ¶ 3 (emphasis added)]. Thus, the agreement purports to release all claims arising from the payment of wages—whether or not rooted in the FLSA—and is not limited to wages for "regular time," as opposed to "on call time" [Doc. 47 p. 1]. Moreover, permitting plaintiff to now claim that the compensation he received under the bargained-for terms of the Settlement Agreement was insufficient would undermine the purpose of the agreement and defendants' reasonable expectations in executing it. *See Lopez v. Taylor*, 195 S.W.3d 627, 632 (Tenn. Ct. App. 2005) (noting that a central purpose of contract law is to "protect[] the parties' reasonable expectations and their right to receive the benefits of the agreement they entered into").

But that is not the end of the analysis. In reviewing pertinent FLSA case law, the Court has determined that a critical question concerning the Settlement Agreement's enforceability remains unresolved. The parties have not briefed or even mentioned this issue—i.e., whether the Settlement Agreement is void under the FLSA, as discussed further below. The Court is, however, mindful of its duty to "liberally construe the briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Bouyer v. Simon*, 22 F. App'x 611, 612 (6th Cir. 2001). Given plaintiff's *pro se* argument that the Settlement Agreement is "null and void" [Doc. 42-1

8

p. 2], as well as the significant concerns of federal public policy implicated here, the Court finds it appropriate to consider this issue at this time.

The FLSA requires employers engaged in interstate commerce to provide overtime compensation, at a rate of at least one-and-a-half times the normal pay rate, to covered employees who work more than forty hours in a week. 29 U.S.C. § 207(a)(1). Employers who violate this duty are liable for both the unpaid overtime wages and statutory liquidated damages. *Id.* § 216(b). Congress adopted the FLSA out of "recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Thus, as a general rule, "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016) (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)). Specifically, permitting waiver of FLSA rights through private bargaining would undermine the FLSA's goal of "protect[ing] workers from substandard wages and oppressive working hours," given the "often great inequalities in bargaining power between employers and employees." *Nasrallah v. Lakefront Lines, Inc.*, No. 1:17-cv-69, 2017 WL 2291657, at *4 (N.D. Ohio May 25, 2017).

In light of the above principles, the circuit courts of appeals generally agree that "[t]here are only two ways in which back wage claims arising under the FLSA can be

9

settled or compromised by employees." *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor, Emp't Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982). First, 29 U.S.C. § 216(c) authorizes the Secretary of Labor to supervise the payment of unpaid overtime wages, and "the agreement of any employee to accept such payment shall upon payment in full constitute a waiver . . . of any right he may have under [the FLSA]." Second, "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores*, 679 F.2d at 1353; *see also D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 113 n.8 (1946) (noting in dicta that "the requirement of pleading the issues and submitting the judgment to judicial scrutiny may differentiate stipulated judgments from compromises by the parties").

Outside of these oversight mechanisms, however, the circuits are largely in agreement that private settlements of FLSA claims are invalid. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 204–05 & n.5 (2d Cir. 2015) (noting that the Second, Fourth, Seventh, Eighth, and Eleventh Circuits agree on this point). While the Sixth Circuit has yet to address this issue, district courts in this circuit have followed the general consensus described above. *See, e.g.*, *Nasrallah*, 2017 WL 2291657, at *6 (refusing to find that a private settlement agreement waived a later FLSA claim); *McConnell v. Applied Performance Techs., Inc.*, No. C2-01-1273, 2002 WL 483540, at *6 (S.D. Ohio Mar. 18, 2002) (same); *cf. Simmons v. Matthis Tire & Auto Serv., Inc.*, No. 13-2875-STA-tmp, 2015 WL 5008220, at *1 (W.D. Tenn. Aug. 20, 2015) (approving a private settlement

10

agreement that the parties negotiated through mediation—after the start of litigation—and then submitted for the court's approval).

But an exception to the general rule may exist, as two decisions of the United States Supreme Court have suggested. First, in *Brooklyn Savings*, the Court considered the claim of a night watchman that he was entitled to liquidated damages under FLSA § 216(b) because his employer, a bank, had failed to pay him overtime wages. 324 U.S. at 699–700. Two years after his employment had ended, the bank offered the watchman a check for $423.16—representing his total unpaid overtime wages—in exchange for a release of all his rights under the FLSA. *Id.* at 700. The Court held that the watchman's acceptance of this offer did not preclude a later claim for liquidated damages, at least absent a "bona fide dispute between the parties with respect to coverage or amount due under the [FLSA]." *Id.* at 703. The Court expressly left unresolved the question "whether parties could privately settle FLSA claims if such settlements resolved 'a bona fide dispute between the parties.'" *Cheeks*, 796 F.3d at 202 (quoting and construing *Brooklyn Savings*, 324 U.S. at 703).

Second, *D.A. Schulte* concerned the claims of service and maintenance employees that they were entitled to overtimes wages under the FLSA. 328 U.S. at 111. Their employer initially refused to pay—on the ground that it was not covered under the FLSA because it was not engaged in interstate commerce—but then acceded to the employees' demands in exchange for a release of liability. *Id.* When the employees later sued for liquidated damages, the Court answered the question left open in *Brooklyn Savings* in part by holding that "the remedy of liquidated damages cannot be bargained away by bona fide

11

settlements of disputes over *coverage*." *Id.* at 114 (emphasis added). But the Court still declined to address "the possibility of compromises in other situations . . . , such as a dispute over the number of hours worked or the regular rate of employment." *Id.* The Court has yet to return to that question. *See Lynn's Food Stores*, 679 F.2d at 1354.

The Eleventh Circuit in *Lynn's Food Stores* concluded that bona fide disputes as to the amount due are amenable to settlement—but only if the parties execute the agreement after litigation begins and then submit their bargain for court approval. *See id.* at 1354. The employer in that case was actually the party that brought suit, seeking judicial approval of a private agreement it had negotiated with affected employees. *Id.* at 1352. The court held that the agreement was invalid, however, because "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA." *Id.* at 1354. Indeed, the court noted that the record contained strong evidence of employer overreaching and manipulative tactics during the negotiation process, amounting to "a virtual catalog of the sort of practices which the FLSA was intended to prohibit." *Id.* The Seventh, Eighth, and Ninth Circuits have come to the same conclusion, albeit after more limited analysis. *See, e.g.*, *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008); *Seminiano v. Xyris Enter.*, 602 F. App'x 682, 683 (9th Cir. 2015).

The Fifth Circuit, on the other hand, has taken a more a permissive view of private settlements of FLSA claims. In *Martin v. Spring Break '83 Productions, L.L.C.*, the court

12

upheld the validity of a private settlement agreement that a union had executed with its members' employer in a dispute concerning overtime wages. 688 F.3d 247, 257 (5th Cir. 2012). The court adopted an exception to the general ban on private FLSA settlements, holding that "a private compromise of claims under the FLSA is permissible where there exists a bona fide dispute as to liability" as a factual matter. *Id.* at 255 (quoting *Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 634 (W.D. Tex. 2005)). The court also noted that the concerns underlying *Brooklyn Savings*, *D.A. Schulte*, and *Lynn's Food Stores* as to unequal bargaining power were not implicated, as the plaintiffs, "with counsel, personally received and accepted compensation for the disputed hours." *Id.* at 257.

The Fifth Circuit retreated from this expansive rule somewhat in *Bodle v. TXL Mortgage Corp.*, 788 F.3d 159 (5th Cir. 2015). In *Bodle*, the plaintiffs had formerly executed a broad release of liability in the defendant's favor as part of the private settlement of an earlier, unrelated state-court action. *Id.* at 161–62. The Fifth Circuit held that this release—which did not specifically mention the FLSA—did not bar the present action for overtime wages. *Id.* at 165. The court found that the *Martin* exception did not apply because, "not only did the prior state court action not involve the FLSA, the parties never discussed overtime compensation or the FLSA in their settlement negotiations." *Id.* Thus, absent "factual development of the number of unpaid overtime hours," the state-court settlement agreement was ineffective to bar a later FLSA claim. *Id.*

Here, neither of the two classic exceptions to the general ban on private FLSA settlements applies. *Nasrallah*, 2017 WL 2291657, at *4. The Secretary of Labor did not

13

supervise the transaction between plaintiff and defendants, and no party has submitted a settlement agreement executed in the course of litigation for this Court's approval. Thus, the Settlement Agreement is unenforceable unless the Court adopts the exception recognized in *Martin* and then finds that it applies here. However, after careful consideration of the authorities cited above, the Court finds that existing Supreme Court and Sixth Circuit precedent does not support such an exception.

First, the Court notes that the Supreme Court in *D.A. Schulte* expressly held that FLSA rights "cannot be bargained away by bona fide settlements of disputes over coverage." 328 U.S. at 114. Thus, even if employer and employee (1) actually disputed FLSA coverage, and (2) entered into a bona fide settlement agreement in light of that dispute, such an agreement would still be void against public policy. *Id.* While the Court declined to reach the question whether this same logic applies to disputes over the number of hours or rate of pay, *see id.*, the Court finds little reason to think it should not. Consider two employers, both of whom enter private settlement negotiations with a former employee outside of litigation. The first asserts during the course of negotiations that it owes nothing to the employee under the FLSA because it is not engaged in interstate commerce. The second asserts that it owes nothing because the employee never worked more than forty hours per week. Both of these hypothetical situations may feature the same "unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank*, 324 U.S. at 706. Both may exhibit the same employer overreaching, psychological and economic pressure, and other "invidious practices." *Lynn's Food Stores*, 679 F.2d at 1354–55. In

other words, the employer's choice of legal argument does not affect the disparity in bargaining power that led Congress to enact the FLSA and the Supreme Court to declare its protections non-waivable. *See Brooklyn Sav. Bank*, 324 U.S. at 707 n.18 ("[T]he prime purpose of the legislation was to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage.").

Furthermore, while the Court is cognizant of the federal policy "favoring private resolution of labor disputes," *Mauget v. Kaiser Eng'rs, Inc.*, 546 F. Supp. 486, 490 (S.D. Ohio 1982), private negotiations of the kind involved here are not the only path to mutually beneficial dispute resolution. Federal courts have long approved fair and reasonable settlements of FLSA claims that employer and employee execute after the latter brings suit in federal court. *Nasrallah*, 2017 WL 2291657, at *4. As the Eleventh Circuit reasoned, "initiation of the action by the employee[] provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. The employee will likely be represented by counsel, and the resulting agreement "is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights." *Id.* Thus, this route to private settlement—along with supervision by the Department of Labor under 29 U.S.C. § 216(c)—strikes the proper balance between the need for efficient resolution of labor disputes and the FLSA's goal of equalizing the parties' bargaining power.

Moreover, the Court finds that its holding aligns with the decisions of other district courts within this circuit. While not binding on this Court, these decisions support the

conclusion the Court has reached in this case. In *Simmons*, the Western District of Tennessee noted that "[c]ourts approve FLSA settlements when they are reached as a result of *contested litigation* to resolve bona fide disputes concerning a plaintiff's entitlement to compensation under the FLSA." 2015 WL 5008220, at *1 (emphasis added). The agreement in *Simmons* was the product of "the parties' good faith participation in mediation with an experienced wage and hour mediator" in an employee-initiated suit. *Id.* Here, by contrast, the Settlement Agreement arose free of the substantive and procedural safeguards of "contested litigation." The parties' settlement negotiations in this case took place in February 2012 [Doc. 38 p. 2; Doc. 43 p. 1], but plaintiff did not bring suit until December 2014 [Doc. 1]. In addition, the fact that plaintiff had the aid of counsel in executing the Settlement Agreement is of no moment. Both *Nasrallah* and *McConnell* considered—and rejected—arguments that the ban on private FLSA settlements did not apply because the employee was represented by counsel during negotiations. *Nasrallah*, 2017 WL 2291657, at *6; *McConnell*, 2002 WL 483540, at *5. Indeed, in *McConnell*, the employee was "an educated and experienced businessman." 2002 WL 483540, at *5. Both courts held that this fact did not trump the FLSA's strong preference for resolution of FLSA disputes in the open air of contested litigation.[2]

---

[2] The Court notes that both cases mention the *Martin* exception for private settlements of bona fide liability disputes. *Nasrallah*, 2017 WL 2291657, at *4; *McConnell*, 2002 WL 483540, at *5. But neither decision actually adopts the exception, and *Nasrallah* even refers to *Martin* as reflecting "perhaps the most liberal view" of FLSA settlements, in contrast to the majority of other circuits to have considered the matter. 2017 WL 2291657, at *4.

Finally, the Court notes that defendants' invocation of the Settlement Agreement constitutes a claim of release, or perhaps accord and satisfaction—both affirmative defenses under Federal Rule of Civil Procedure 8(c). The party asserting such a defense bears the burden of proving, by a preponderance of evidence, that the defense bars the plaintiff's claim. *Scipio v. Sony Music Entm't*, 173 F. App'x 385, 394 (6th Cir. 2006) (citing *Ward v. Wilkinson*, No. 01A01-9803-CH-151, 1999 WL 221843, at *1 (Tenn. Ct. App. Apr. 19, 1999)). Thus, defendants have moved for summary judgment on a theory for which they bear the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., concurring) ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." (emphasis omitted)). Federal Rule of Civil Procedure 50(a)(1) provides that a party is entitled to judgment as a matter of law—i.e., a directed verdict—if the other party has been fully heard on an issue and "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [other] party on that issue."

The Court finds that, even if it were to adopt the *Martin* exception discussed above, defendants have failed to prove that any reasonable jury would necessarily agree that the Settlement Agreement was the product of a "bona fide dispute about time worked and not . . . a compromise of guaranteed FLSA substantive rights." *Martin*, 688 F.3d at 255. Specifically, defendants have failed to attach Rule 56(c) materials—i.e., depositions, affidavits, stipulations, discovery responses, or other sworn materials—detailing any

17

"factual development of the number of unpaid overtime hours []or of compensation due for unpaid overtime" during the parties' settlement negotiations. *Bodle*, 788 F.3d at 165. The only qualifying material defendants have supplied in support of their motion is the Settlement Agreement itself, which does not meaningfully address this question [*See* Doc. 36-1]. As a result, the record is currently unclear as to whether the parties actually negotiated and then compromised a bona fide dispute concerning the number of overtime hours plaintiff worked and the resulting compensation defendants owed him.

Therefore, defendants are not entitled to judgment as a matter of law on their affirmative defense. *See* Fed. R. Civ. P. 56(a).

## B.    The FLSA Statute of Limitations

Second, defendants argue that Counts I, II, IV, and V of the complaint are barred as untimely by the FLSA statute of limitations [Doc. 38 pp. 2–3]. For the reasons explained below, the Court finds that defendants are correct on this point.

The FLSA contains a two-year limitations period for minimum- and overtime-wage claims, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "A cause of action for overtime compensation under the FLSA accrues at the regular payday immediately following the work period during which services were rendered and for which overtime compensation is claimed." *Hasken v. City of Louisville*, 234 F. Supp. 2d 688, 691 (W.D. Ky. 2002). And the FLSA specifically provides that an action for unpaid overtime wages "shall be considered to be commenced on the date when the complaint is filed." 29

18

U.S.C. § 256.  Ordinarily, "[b]ecause the statute of limitations is an affirmative defense, the burden is on the defendant to show that the statute of limitations has run."  *Campbell v. Grand Trunk W.R.R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001).  If the defendant meets this burden, "the burden shifts to the plaintiff to establish an exception to the statute of limitations."  *Id.* (citing *Drazan v. United States*, 762 F.2d 56, 60 (7th Cir. 1985)).  On the other hand, "[a] plaintiff that argues the three year statute of limitations is applicable and alleges willful conduct bears the burden" of coming forward with sufficient evidence that the defendant acted willfully.  *Bacon v. Eaton Aeroquip, LLC*, No. 11-cv-14103, 2014 WL 5090825, at *8 (E.D. Mich. Oct. 9, 2014) (citing *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991)).

The Supreme Court has defined "willfulness" in this context to require that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111 (1985)); *accord Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002).  Courts in the Sixth Circuit have found willfulness "where the defendant had previous Department of Labor ["DOL"] investigations regarding overtime violations, prior agreements to pay unpaid overtime wages, and assurances of future compliance," along with situations where "the employer deliberately chose to avoid researching the laws' terms."  *Thomas v. Doan Constr. Co.*, No. 13–11853, 2014 WL 1405222, at * 14 (E.D. Mich. Apr. 11, 2014) (quoting *Cook v. Carestar, Inc.*, 11–00691, 2013 WL 5477148, at *13 (S.D. Ohio Sept. 13,

19

2013)); *see also Byrd v. ABC Prof'l Tree Serv., Inc.*, 832 F. Supp. 2d 917, 920 (M.D. Tenn. 2011) (noting that the Sixth Circuit has "repeatedly [held] that previous DOL investigations regarding overtime violations are evidence that subsequent FLSA violations are willful"). The willfulness determination is proper for the Court to make on summary judgment. *See Herman v. Palo Grp. Foster Home, Inc.*, 183 F.3d 468, 474 (6th Cir. 1999); *Abadeer v. Tyson Foods, Inc.*, 975 F. Supp. 2d 890, 907 (M.D. Tenn. 2013).

Here, plaintiff alleges that his employment with defendants began on October 10, 2011, and ended on January 10, 2012 [Doc. 1 ¶ 13]. Defendants do not contest these dates [Doc. 35 ¶ 13]. Defendants originally asserted that, even assuming their violation of the FLSA was willful—which defendants dispute—plaintiff's action is untimely under either the two-year period or the three-year period because he did not file his complaint until January 15, 2015 [Doc. 38 p. 3]. Plaintiff responded (correctly) that he actually filed his complaint on December 22, 2014 [Doc. 43 pp. 1–2]. Plaintiff further asserts that "[o]bviously defendants committed a willful violation of the FLSA" and that "their action[s] were in reckless disregard" of the FLSA [*Id.* at 2]. Defendants did not address the statute of limitations issue further in their reply briefs [*See* Docs. 44–45].

After carefully considering the parties' positions on this matter, the Court finds that the two-year limitations period under § 255(a), rather than the three-year period for willful violations, governs plaintiff's claims. The Court finds, as an initial matter, that defendants have satisfied their burden under Rule 56(c) as the moving party. Namely, defendants have pointed out that the record contains no evidence that they acted knowingly or recklessly

with regard to their alleged FLSA violations [*See* Doc. 38 pp. 2–3]. The burden then shifted to plaintiff to specify evidence in the record upon which a reasonable finder of fact could find in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Plaintiff has failed to carry this burden. Only one sentence in plaintiff's three briefs responding to defendants' dispositive motions addresses the willfulness issue. That sentence merely states, without citation to any Rule 56(c) materials in the record, that "[o]bviously defendants committed a willful violation of the FLSA" and that "their action[s] were in reckless disregard to the Law" [Doc. 43 p. 2]. Such a conclusory statement is, without more, insufficient. *See Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (noting that the nonmoving party responding a Rule 56 motion "is not entitled to a trial merely on the basis of allegations").

The Court is, of course, cognizant that plaintiff is proceeding in this matter *pro se*. The Court also notes that, under Rule 56(c)(3), it "need consider only the cited materials, but it may consider other materials in the record." Having independently reviewed the record in this matter, however, the Court can locate no evidence of willfulness as the Sixth Circuit has conceived of that term. *See Dole*, 942 F.2d at 967 (finding willfulness based on evidence of an employer's "earlier [FLSA] violations, his agreement to pay unpaid overtime wages, and his assurance of future compliance with the FLSA"). Here, the record is devoid of any evidence that defendants had violated the FLSA minimum- or overtime-wage provisions in the past, had previously agreed to repay such wages, or had promised (and then failed) to comply with the FLSA. There is also no evidence that defendants

deliberately chose to avoid learning about the FLSA's provisions. *See Thomas*, 2014 WL 1405222, at * 14. Plaintiff's complaint alleges that defendants "failed to post the legally required notice of plaintiff's rights under the FLSA" [Doc. 1 ¶ 36],[3] but unsworn allegations in an unverified complaint "lack[] the force and effect of an affidavit for purposes of responding to a motion for summary judgment," *Zainalian v. Memphis Bd. of Educ.*, 3 F. App'x 429, 431 (6th Cir. 2001).

Likewise, the Eastern District of Michigan in *Thomas* granted summary judgment for defendants on the issue whether the two- or three-year limitations period applied. 2014 WL 1405222, at * 14. The court found that summary judgment was proper because the

---

[3] This same paragraph states that, as a result of this failure, "the statute of limitations applicable to plaintiff['s] claim should be equally tolled" [Doc. 1 ¶ 38]. The Court assumes that plaintiff refers here to equitable tolling. That doctrine "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007). The plaintiff bears the burden of proving entitlement to equitable tolling. *See McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003). The Sixth Circuit has cautioned that federal courts should "sparingly bestow equitable tolling," and that the doctrine generally "applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond [her] control." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000). Relevant factors include (1) the plaintiff's lack of actual or constructive notice of the filing requirements, (2) the plaintiff's diligence in pursuing her rights, (3) whether the defendant(s) will suffer any prejudice, and (4) whether the plaintiff's ignorance of the filing requirements was reasonable. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 437 (6th Cir. 2007).

Here, outside of the vague reference to equitable tolling in his complaint, plaintiff has never specifically requested that the Court invoke the doctrine. Notably, plaintiff did not request such relief in responding to defendants' statute-of-limitations arguments in their dispositive motions. And even if the Court were to construe paragraph 38 of the complaint as a sufficient request, plaintiff has made no effort to carry his burden of "demonstrating why he . . . is entitled to equitably toll the statute of limitations in [this] particular case." *Struck v. PNC Bank, N.A.*, 931 F. Supp. 2d 842, 846 (S.D. Ohio). The Court is likewise unaware of any facts suggesting the appropriateness of equitable tolling. Indeed, the Court notes that plaintiff was involved in settlement negotiations as early as February 2012 concerning his right to overtime wages under the FLSA. Thus, the Court will decline to equitably toll the statute of limitations under § 255(a) in this case.

22

plaintiff "ha[d] not brought forth any evidence that Defendant had any prior violations of the FLSA or that she ever complained to Defendant about overtime." *Id.*[4] The court also specifically rejected the plaintiff's argument that sufficient evidence of willfulness was apparent in the defendant's failure to seek out legal advice or DOL documentation concerning the FLSA. *Id.* The evidence of willfulness here is equally lacking.

Therefore, there is no genuine dispute as to whether defendants willfully violated the FLSA that is apparent on the record before the Court. As such, the Court finds that the two-year limitations period under § 255(a) applies to plaintiff's FLSA allegations. Plaintiff filed his complaint with this Court on December 22, 2014, thus tolling the statute of limitations on that date. *See* 29 U.S.C. § 256. But all agree that plaintiff's employment with defendants ended by approximately January 10, 2012. Thus, the statute of limitations on all possible claims for unpaid minimum[5] and overtime wages under the FLSA had run almost a full year before plaintiff filed his complaint. And, although few courts have addressed this issue, the general FLSA limitations period under § 255(a) appears to also govern FLSA retaliation claims. *See Humphrey v. Rav Investigative & Sec. Servs. Ltd.*, 169 F. Supp. 3d 489, 502 (S.D.N.Y. 2016). A theory of retaliation based on plaintiff's

---

[4] Although plaintiff's complaint alleges that at some point he complained to defendants about a lack of overtime pay, the complaint does not specify when or to whom he made these remarks [*See* Doc. 1 ¶¶ 38–40]. But more importantly, as noted above, unsworn allegations in an unverified complaint do not constitute Rule 56(c) materials sufficient to survive a motion for summary judgment. *See Zainalian*, 3 F. App'x at 431. Conclusory assertions are not enough.

[5] The Court notes that Count V alleges that defendants failed to pay plaintiff the minimum wage required under 29 U.S.C. § 206. The parties do not discuss this claim in their briefings on defendants' dispositive motions. But because the FLSA statute of limitations under § 255(a) applies equally to claims for unpaid minimum and overtime wages, the result is the same.

23

January 10, 2012, termination is thus time-barred.  As for plaintiff's claim that defendants

retaliated by discouraging other employers from hiring him, the Court will discuss that

theory below, in the context of plaintiff's defamation claim.  *See infra* Section III.D.

Therefore, the Court finds that Counts I, II, IV, and V of the complaint are untimely

under § 255(a).  Defendants are thus entitled to summary judgment on these claims.[6]

### C.    Plaintiff's Breach of Contract Claim[7]

Third, defendants argue that they are entitled to summary judgment on Count VII

[Doc. 38 p. 3], which alleges that defendants breached their employment contract with

---

[6] The Court notes that, even if it were to find that the three-year limitations period under § 255(a) applied, most alleged violations of the FLSA during the two-year period of plaintiff's employment would still be time-barred.  The Sixth Circuit has explicitly rejected the "continuing violation" theory of FLSA violations.  *Anderson v. City of Bristol*, 6 F.3d 1168, 1174 (6th Cir. 1993).  In other words, "because each violation of the FLSA gives rise to a new cause of action, each failure to pay overtime begins a new statute of limitations period as to that particular event." *Hasken*, 234 F. Supp. 2d at 691 (citing *Knight v. Columbus,* 19 F.3d 579, 582 (11th Cir. 1994)). As a result, FLSA plaintiffs in the Sixth Circuit are entitled to recover back pay only for the pay periods falling within the limitations period—whether two or three years.  *See Fulkerson v. Yaskawa Am., Inc.*, No. 3:13-cv-130, 2015 WL 6408120, at *1 (S.D. Ohio Oct. 23, 2015).  Plaintiff here would thus only be able to recover back pay for the three-week period between December 22, 2011, and January 10, 2012—if that period contained any FLSA violations at all.

[7] Because the Court has now dismissed all of plaintiff's claims arising under federal law, the Court has discretion to decline to exercise supplemental jurisdiction over plaintiff's remaining state-law claims, pursuant to 28 U.S.C. § 1367(c)(3).  In exercising this discretion, district courts must "consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Stevens v. Saint Elizabeth Med. Ctr.*, 533 F. App'x 624, 633 (6th Cir. 2013) (quoting *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 211 (6th Cir. 2004)).  Here, this case has been on the Court's docket for almost three years, the parties have had ample opportunity to conduct discovery, and the parties have fully briefed the merits of defendants' dispositive motions on plaintiff's state-law claims.  Moreover, the Court is closely familiar with the facts underlying plaintiff's allegations, and these claims raise no novel or complex issues of state law.  Thus, "[o]n balance, the interests of judicial economy support [a] decision to resolve [plaintiff's] state-law claims."  *See id.* (affirming a district court's decision to resolve pendent state-law claims on the merits based on the same considerations).

plaintiff [Doc. 1 ¶¶ 93–99]. Defendants assert that plaintiff has failed to provide a copy of any written contract for employment and has offered only conclusory allegations that they failed to pay plaintiff all wages due at the agreed-upon rate of $10 per hour [Doc. 38 p. 3 (citing *Rowe v. Register*, No. 1:07-cv-20, 2008 WL 2009186, at *3 (E.D. Tenn. May 8, 2008) ("A conclusory allegation of breach of contract of employment is not enough to defeat a Rule 12(b)(6) motion to dismiss the complaint when there are no underlying factual allegations in the complaint that support and state a claim for breach of contract of employment that is plausible on its face."))].

Plaintiff responds that the parties "entered into an express and/or implied contract of employment" and that "[i]t was an oral contract and no written form of contract ever existed" [Doc. 43 p. 2]. Plaintiff asserts that he will prove these facts at trial. Defendants reply that plaintiff has still failed to plead—much less prove—all material elements of breach of contract, and thus has failed to adequately state a claim on such a theory [Doc. 44 pp. 2–3 (citing *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (noting that, under Rule 12(b)(6), "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice"))]. Plaintiff's further "rebuttal" then indicates that he "is in the process of conducting discovery" and will "file subsequent motions clarifying the situation" once additional facts are uncovered [Doc. 47 p. 2].

The Court finds that plaintiff has failed to carry his burden as the nonmoving party under Rule 56, and that defendants are accordingly entitled to summary judgment on Count VII. The essential elements of a breach of contract claim under Tennessee law are: "(1)

25

the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367, 374 (Tenn. Ct. App. 2006) (quoting *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Here, while defendants do not dispute the existence of an at-will employment relationship with plaintiff [*see* Doc. 35 ¶ 13], the Court agrees with defendants that plaintiff has come forward with no other evidence demonstrating that—or even suggesting how—defendants breached this contract. The complaint itself contains only the bare assertion that defendants "fail[ed] to pay plaintiff all wages due" [Doc. 1 ¶ 95]. And plaintiff has failed to produce any Rule 56(c) materials relating to the second and third elements of this claim: breach and damages. *See Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) ("The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial.").

Furthermore, despite plaintiff's assertion that he is still in the process of conducting discovery, the Court notes that it expressly ordered the parties to produce all materials pertinent to defendants' dispositive motions within fourteen days of entry of the Court's July 26 order [Doc. 46]. Plaintiff filed no materials or motions in response. Plaintiff did not, for example, seek an extension of time in which to produce pertinent materials. Nor did he seek relief under Rule 56(d). *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it . . . [or] allow time

26

to obtain affidavits or declarations or to take discovery . . . ."); *see also Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003) (holding that the district court erred by deferring consideration of a summary judgment motion when the nonmoving party had failed to file the explanatory affidavit required by Rule 56(d)); *Emmons v. McLaughlin*, 874 F.2d 351, 356 (6th Cir. 1989) (noting that a party invoking Rule 56(d) "must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing" (quoting *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975))).[8] The Court further notes that this case has been pending before the Court for almost three years and that the parties have had ample time to conduct discovery. Thus, the Court finds that resolution of defendants' dispositive motions is proper at this time.

Indeed, even if the Court had not converted defendants' motion to dismiss to one for summary judgment, the Court would still find that Count VII is alternatively subject to dismissal under Rule 12(b)(6). As in *Rowe*, the complaint here lacks any "underlying factual allegations . . . that support and state a claim for breach of contract of employment." 2008 WL 2009186, at *3. Plaintiff never specifies what portion, if any, of his ordinary, $10-per-hour pay defendants have failed to provide him.[9] Thus, the Court is left merely to

---

[8] *See also* E.D. Tenn. L.R. 83.13 ("Parties proceeding *pro se* shall be expected to be familiar with and follow the Federal Rules of Civil Procedure and [the Local Rules].").

[9] To the extent that Count VII might be premised on defendants' failure to pay minimum or overtimes wages under the FLSA, such a theory is time-barred. *See supra* Section III.B.

speculate as to how defendants may have breached plaintiff's unwritten employment contract. *See Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 555 (2007) (noting that the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" (citations and footnote omitted)).

Therefore, the Court finds that defendants are entitled to judgment as a matter of law in their favor on Count VII of the complaint.

### D. Plaintiff's Defamation Claim

Fourth, defendants argue that they are entitled to summary judgment on Count III: plaintiff's defamation claim [Doc. 38 pp. 3–5]. The complaint alleges that, after plaintiff's termination, defendants informed prospective employers who contacted defendants for a reference that plaintiff was a "bad worker" who would sue them [Doc. 1 ¶¶ 41–42, 75–78]. Plaintiff claims these statements were both false and damaging to his reputation [*Id.*].

To make out a prima facie case of defamation under Tennessee law, the plaintiff must demonstrate that: "[1] a party published a statement; [2] with knowledge that the statement is false and defaming to the other; or [3] with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999); *see also Pate v. Serv. Merch. Co.*, 959 S.W.2d 569, 573 (Tenn. Ct. App. 1996) ("The plaintiff must establish that a false and defamatory statement was published concerning the plaintiff."). Furthermore, while the ultimate question whether the statement harmed the plaintiff's reputation is for the jury, the threshold question whether the statement is defamatory at all "is a question of law to

28

be determined by the court." *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978). And statements of opinion are actionable only if they "may reasonably be understood to imply the existence of undisclosed defamatory facts justifying the opinion." *Revis v. McClean*, 31 S.W.3d 250, 253 (Tenn. Ct. App. 2000). The limitations period for slander, i.e., spoken defamation, is six months, and no discovery rule applies; by contrast, the limitations period for libel, i.e., written defamation, is one year. *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d 818, 821 (Tenn. 1994).

Here, defendants argue that plaintiff has failed to plead and establish a prima facie case of slander under Tennessee law [Doc. 38 pp. 3–6]. Defendants submit that the complaint provides little more than a formulaic recitation of the elements of a defamation cause of action. Alternatively, defendants assert that Count III is barred by the applicable statute of limitations. Defendants note that, although plaintiff never states when (or precisely to whom) they allegedly made these defamatory remarks, a fair inference is that the remarks did not occur within one year of the filing of this action, given that plaintiff was terminated on January 10, 2012. Plaintiff's response brief contains only one sentence concerning his defamation claim, stating it is "not time barred, as the defamatory statements were made within one year of filing this lawsuit" [Doc. 43 p. 1]. Plaintiff's later "rebuttal" brief asserts only that he is continuing to conduct discovery regarding his breach of contract and defamation claims [Doc. 47 p. 2].[10]

---

[10] The Court finds that to defer ruling on defendants' dispositive motions with regard to this claim would be improper for the same reasons identified with regard to plaintiff's breach of contract claim. *See supra* Section III.C.

After considering the parties' respective positions on this issue, the Court concludes that summary judgment is warranted as to Count III. Plaintiff's complaint fails to outline "enough facts to state a claim to relief that is plausible on its face" under the Rule 12(b)(6) pleading standard, *Twombly*, 550 U.S. at 570, but beyond that, plaintiff has failed to provide any Rule 56(c) materials demonstrating that a genuine factual dispute remains for trial on this claim. As the record stands, plaintiff has offered nothing more than his conclusory assertions that defendants—at unknown times, to unknown parties, and in unknown contexts—said he was a poor and litigious employee. The record is even insufficient for the Court to determine whether plaintiff's allegations are time-barred: Not only is it unclear when these statements were allegedly made, but plaintiff has failed to even offer evidence whether the remarks were oral or written, which is dispositive of the length of the limitations period. *See* Tenn. Code Ann. §§ 28-3-103 (six-month limitations period for slander); 28-3-104(a)(1)(A) (one-year limitations period for libel).

Yet plaintiff bore the burden, as the party responding to a Rule 56 motion for summary judgment, of pointing to affirmative evidence in the record to establish that a reasonable juror could find in his favor on a defamation claim. *See Anderson*, 477 U.S. at 248. Plaintiff has not done so, and could not have done so because the record contains no such evidence. This paucity of proof also prevents the Court from exercising its threshold duty of determining whether defendants' alleged statements that plaintiff was a "bad" and litigious employee [Doc. 1 ¶ 41] were actionable defamation or mere opinion. *See Revis*,

31 S.W.3d at 253. In short, no reasonable juror could find for plaintiff on his defamation claim on the basis of the evidence now before the Court.

Therefore, Count III is subject to dismissal under either the Rule 12(b)(6) standard for failure to state a claim or the Rule 56(a) standard for summary judgment.

### E. Plaintiff's Unjust Enrichment Claim

Finally, defendants argue that they are entitled to summary judgment on Count VI [Doc. 38 pp. 5–6], which asserts an equitable claim for unjust enrichment [Doc. 1 ¶¶ 90–92]. The complaint alleges that defendants "received the benefits of plaintiff's work, without compensating plaintiff," and that "defendant[s] should not be allowed to prosper at the expense of plaintiff" [*Id.* ¶ 91].

Defendants first argue that plaintiff received consideration for a release of any claim to unpaid compensation in the Settlement Agreement. Alternatively, defendants argue that plaintiff has not satisfied the Tennessee-law requirement of demonstrating that he exhausted all remedies against defendants [Doc. 38 p. 5 (citing *Freeman Indus. v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005))]. Plaintiff responds that an unjust enrichment claim is proper here because he has not been compensated for all his work for defendants [Doc. 43 p. 3]. Plaintiff also asserts that the Settlement Agreement does not bar this theory because plaintiff received consideration only for releasing claims based on certain FLSA violations, not a claim based on unjust enrichment.

31

The Court finds that defendants are entitled to summary judgment on Count VI of the complaint. First, to the extent this claim rests on an allegation that defendants were unjustly enriched by failing to pay minimum or overtime wages,[11] such a theory is merely duplicative of plaintiff's FLSA claims, discussed above. *See supra* Sections III.A–B. Thus, this theory would be time-barred under 29 U.S.C. § 255(a). Further, to the extent this claim rests on an allegation of unpaid regular-time pay at the agreed-upon rate of $10 per hour, the Court finds that the Settlement Agreement bars such a theory. As noted above, plaintiff admits that he executed the Settlement Agreement with the advice of counsel and received consideration for doing so [*See* Doc. 43 p. 1]. Although that agreement is ineffective to waive his FLSA rights, *see supra* Section III.A, this same reasoning does not extend to state-law equity claims for unpaid wages, *see Lynn's Food Stores*, 679 F.2d at 1354 (noting that what the FLSA precludes is waiver of an employee's "statutory rights"). Plaintiff has not argued that the Settlement Agreement is substantively or procedurally unconscionable, void against Tennessee public policy, or otherwise unenforceable. And any fair reading of the Settlement Agreement's language must result in the conclusion that plaintiff released all claims to compensation arising out of his employment with defendants, except to the extent barred by the FLSA [*See* Doc. 37-1 ¶ 3 (releasing defendants from any "fault or liability, in contract, by statute, or in tort, however,

---

[11] It is unclear what forms of allegedly unpaid compensation constitute the basis for Count VI. Given plaintiff's *pro se* status and the Court's duty to liberally construe his pleadings, *Bouyer*, 22 F. App'x at 612, the Court will consider both alternatives plaintiff may be alleging—i.e., unpaid regular-time pay or unpaid FLSA benefits.

described, . . . arising from the payment of wages, including overtime wages")]. Thus, there is no genuine factual dispute that the Settlement Agreement bars Count VI.

Even if that were not true, the Court notes that unjust enrichment is not a viable independent cause of action in this case. Unjust enrichment is a remedy that Tennessee courts may, in their discretion, invoke when no valid contract exists at law, yet some relief is warranted in equity. *See Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998) ("Unjust enrichment is a quasi-contractual theory or is a contract implied-in-law in which a court may impose a contractual obligation *where one does not exist*." (emphasis added)); *accord Freeman*, 172 S.W.3d at 525. Here, however, the parties agree that a valid employment contract existed. *See supra* Section III.C. Thus, plaintiff's only recourse is under the terms of his former contract with defendants, not under a quasi-contract theory. *See Metro. Gov't of Nashville & Davidson Cty. v. Cigna Healthcare of Tenn., Inc.*, 195 S.W.3d 28, 32 (Tenn. Ct. App. 2005) (noting that quasi-contract relief is unavailable if a valid express or implied-in-fact contract exists). But because the Court has granted summary judgment in defendants' favor on plaintiff's breach of contract claim, this claim must likewise fail.

Therefore, the Court finds that defendants are entitled to judgment as a matter of law in their favor on Count VI of the complaint.

**IV.    Conclusion**

Accordingly, for the reasons stated above, defendants' Motion for Partial Summary Judgment [Doc. 36] and Motion to Dismiss [Doc. 38], the latter of which the Court treats as a motion for summary judgment [Doc. 46], will both be **GRANTED**.  The Clerk of Court will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE